UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CUSTOMS & INTERNATIONAL TRADE NEWSLETTER,<br><br>Plaintiff,<br><br>v.<br><br>U. S. CUSTOMS AND BORDER PROTECTION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 08-0478 (RMC)<br>)<br>)<br>)<br>)<br>)<br>) |

### PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION MEMORANDUM

PIERS contains identical information that plaintiff is seeking. For example, Herrick inputs a European Union country subject to the 100% duties into the PIERS CD ROM in the country of origin field. Using Gilda Industries, Inc. as an example the country would be Spain. Next the term toasted breads in entered into the commodity field. Then the HTSUS subheading 1905.40 is entered into the harmonized code field. This results in a series of importers bringing in this commodity from Spain. [Herrick. Dec. ¶¶ 5 and 6]. Gilda's name appears with its name and address. Because its toasted breads are from Spain we know that it is entered under HTSUS subheading 1905.40 free of duty and is then subject to 100% duties under HTSUS subheading 9903.02.35.

There was a discussion of what is needed in a public-domain case for a FOIA requester to satisfy its burden of production. In Cottone v. Reno, 193 F. 3d 550, 555 (D.C. Cir. 1999) the court stated:

> "To be sure, we suggested in *Davis* that, to satisfy the burden of production in public-domain cases, the FOIA requester may have to produce a 'hard copy' version of what he requests. See *Davis*, 968 F.2d at 1280. Yet by no means did *Davis* purport to establish a uniform, inflexible rule requiring every public-domain claim to be substantiated with a hard copy simulacrum of the sought-after material. Of course, it will very often be the case that some type of hard copy facsimile will be the only practicable way for a FOIA requester to demonstrate that the specific information he has solicited has indeed circulated into the public domain. And this is as it should be; for while the 'logic of FOIA' postulates that an exemption can serve no purpose once information--including sensitive law-enforcement intelligence--becomes public, Niagara Mohawk, 169 F.3d at 19, we must be confident that the information sought is truly public and that the requester receive no more than what is publicly available before we find a waiver. See Fitzgibbon v. CIA, 286 U.S. App. D.C. 13, 911 F.2d 755, 765 (D.C. Cir. 1990); *Afshar*, 702 F.2d at 1130-32; Military Audit Project v. Casey, 211 U.S. App. D.C. 135, 656 F.2d 724, 752 (D.C. Cir. 1981). But here it would be an empty formalism to insist that Cottone produce a hard-copy, verbatim transcription of the audio tapes to prove which tapes were played at trial when he has already produced a certified transcript from his trial that indicates precisely which tapes were, in fact, played. Phrased in the parlance of our public-domain cases, *Cottone* has 'pointed to specific information in the public domain that appears to duplicate that being withheld.' *Afshar*, 702 F.2d at 1130."

Using the hard copy test, Customs & International Newsletter ["Newsletter"], has produced from the PIERS CD ROMs the name and address of a company that pays the 100% duties. [Herrick, Dec. ¶ 6].

The U. S. Customs and Border Protection ["Customs"] has identified 244 importers paying 100% duties. Newsletter could go through all the CD ROMs to extrapolate more companies. However, as *Cottone* instructs there is no uniform inflexible rule requiring every public-domain be substantiated with hard copy. Since Newsletter has presented the requisite hard copy the logic of FOIA that the exemption raised by Customs serves no purpose.

Newsletter has met its burden for disclosure pursuant to the "public-domain" doctrine.

Customs is improperly withholding the requested names and addresses under FOIA exemptions (b)(4) and (b)(6).

### B. Customs Was Required To Notify Other Importers Of Newsletter's FOIA Request

Interestingly in Gilda Industries, Inc. v. U. S. Customs and Border Protection, 457 F. Supp. 2d 6 (D.D.C. 2006) Customs followed the mandate of the relevant Executive Order and notified importers of Gilda's FOIA request, but in this case, which is substantial similar, Customs takes the position it does not have to follow the Executive Order and notify the importers of Newsletter's FOIA request. Obviously an inconsistent position, with the latter position not in accordance with the law.

### C. Derivative Use Of Information Is Not Prohibited By FOIA

Newsletter is a publication and not an importer. It has no competitors regarding the beef hormone 100% duty issue, therefore, its request is distinguishable from this issue which was raised in *Gilda, supra*. Throughout these proceedings the government has expressed it concerns that the release of the requested names and addresses of the companies can be combined with other information resulting in Newsletter obtaining access to confidential commercial information.

However, there is no support in either the text or legislative history of FOIA for a prohibition on considering "derivative uses" of information obtained through FOIA. Such a concern was raised by the government in Consumers' Checkbook v. U. S. Department of Health and Human Services, 502 F. Supp. 2d 79, 85 (D.D.C. 2007)(appeal pending):

3

"Plaintiff requested information regarding 2004 Medicare claims submitted by physicians. Plaintiff did not request identifying information for individual patients, but did request information that would allow plaintiff to identify individual Medicare service providers and determine each time a provider performed a particular service or procedure. Defendants argue that releasing the requested information would also allow plaintiff to combine the information with a publicly available Medicare fee schedule in order to calculate the specific amount that a Medicare provider receives annually in Medicare reimbursements. Defendants argue that this financial information would constitute an unwarranted invasion of the personal privacy of Medicare providers."

This court ordered the release of the requested information. "Therefore, the Court concludes that disclosure of the physician information is not 'clearly unwarranted' in light of the important public interests at stake. See *Public Citizen*, 477 F. Supp. at 605." Consumers', supra, p. 87.

The courts have recognized the viability of considering derivative uses of information when such information obtained through FOIA could "...provide leads for an investigative reporter seeking to ferret out 'what government is up to.'" Painting and Drywall Work Preservation Fund v. Dep't of Housing and Urban Development, 936 F. 2d 1300, 1303 (D.C. Cir. 1991).

## Conclusion

For the reasons set forth in Newsletter's opposition to defendant's motion for summary judgment and Newsletter's reply to defendant's opposition to Newsletter's motion for summary judgment, Newsletter's motion for summary judgment should be granted and defendant's motion for summary judgment should be denied.

Respectfully submitted,

          /s/
PETER S. HERRICK, D.C. Bar #137935
Peter S. Herrick, P.A.
3520 Crystal View Court
Miami, Florida 33133
Tel. 305-858-2332
Fax. 305-858-6347
Email: pherrick@bellsouth.net
Attorney for Plaintiff

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above-described motion was sent by regular U. S. Mail to Judith A. Kidwell, Esq., Assistant U. S. Attorney, attorney for defendant, 555 4th Street NW, Room E4905, Washington DC 20001 on August 18, 2008.

      /s/
Peter S. Herrick