# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CUSTOMS & INTERNATIONAL TRADE NEWSLETTER, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 08-478 (RMC) |
| U.S. CUSTOMS AND BORDER PROTECTION, | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Although this case was filed by a different plaintiff, this case presents the same question addressed in *Gilda Industries, Inc. v. U.S. Customs & Border Protection Bureau*, 457 F. Supp. 2d 6 (D.D.C. 2006). That is, under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, can the U.S. Customs & Border Protection Bureau ("CBP") refuse to release the names and addresses of certain importers when that information, combined with other publicly available data, might be used to cause the importers substantial commercial harm? This Court concluded in *Gilda* that CBP properly declined to release such information in reliance on Exemption 4, *id*. § 552(b)(4), the confidential commercial information exception. Because the Court reaches the same conclusion here, summary judgment will be granted in favor of CBP.

## I.  FACTS

Plaintiff, the United States Customs & International Trade Newsletter (the "Newsletter"), is a periodic publication of the Peter S. Herrick, P.A. law firm.[1] Compl. ¶ 3. Mr.

---

[1] Mr. Herrick serves as counsel for the Newsletter in this action.

Herrick, on behalf of the Newsletter, submitted a letter to CBP dated January 7, 2008 and by fax on March 11, 2008, which requested:

> the names and addresses of the companies who are the subject of the Beef Hormone Implementation Directive ["Directive"], copy enclosed, who imported the referred to designated products from the European Community during the period July 1 to December 31, 2007.

Def.'s Mot. to Dismiss or for Summ. J., Ex. 1 ("Suzuki Decl.")[2] ¶ 4, Ex. A. CBP did not respond, and the Newsletter filed this suit on March 20, 2008. Then, on April 15, CBP denied the FOIA request because the requested information is "confidential commercial information as described in 5 U.S.C. § 552(b)(4)." Suzuki Decl. ¶ 10.

Companies who are the subject of the Beef Hormone Implementation Directive are importers subject to 100% duty pursuant to their classification under the Harmonized Tariff Schedule of the United States ("HTSUS") subheadings 9903.02.21 through 9903.02.47. *Id*. ¶¶ 11 & 16. The 100% duty has its origins in a trade dispute between the European Community and the United States. The dispute arose after the European Community decided to ban imports of U.S. beef products that have been treated with hormones. In accordance with a World Trade Organization Appellate Body Decision in the dispute, HTSUS subheading 9903.02 was enacted to impose duties on a list of twenty-seven specific European products in retaliation for the ban on American beef. *Id*. ¶ 16.

The names and addresses of the companies that are the subject of the Beef Hormone Implementation Directive is information submitted on entry documents that importers are required to file with CBP. *Id*. ¶ 13. When the goods arrive in a U.S. port, CBP requires the importer to

---

[2] In support of its motion, CBP filed the declaration of Shari Suzuki, the Chief FOIA Appeals Officer for the Policy and Litigation Branch, Regulations and Disclosure Law Division, Regulations and Rulings, Office of International Trade, CBP, Department of Homeland Security.

complete an Entry and an Entry Summary. *Id*. ¶ 14.  By completing these documents, the importer is required to provide specific and detailed information about the shipment, including the HTSUS number which represents a very specific description of the imported goods. *Id*.  The importer is required to complete the Entry and Entry Summary under penalty of law, knowing that CBP is restricted from disclosing the information to the public. *Id*.

In response to the Newsletter's FOIA request, CBP queried the Automated Commercial System ("ACS"), a compilation of CBP databases containing all of the commercial entry information submitted to CBP at more than 300 ports worldwide. *Id.* ¶ 11.  CBP searched the ACS by using the HTSUS subheadings 9903.02.21 through 9903.02.47 and the date range July 1 through December 31, 2007. *Id.*  This search revealed identifying information for 244 importers. *Id*.  CBP refused to release the information pursuant to the confidential commercial information exemption, Exemption 4.  *See* 5 U.S.C. § 552(b)(4).  CBP and the Newsletter have filed cross motions for summary judgment.[3]

## II.  STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty*

---

[3] CBP moves in the alternative to dismiss, based on its claim that it did not receive the FOIA request until March 11, 2008, and that the Newsletter had not exhausted its administrative remedies when it filed suit on March 20.  This point is moot, however, as the exhaustion requirement was satisfied when CBP denied the request on April 15.  The Newsletter was not required to file an administrative appeal because this suit was already pending. *Pollack v. Dep't of Justice*, 49 F.3d 115, 119 (4th Cir. 1995) (a requester is not required to file an administrative appeal when an agency makes an adverse determination after the requester filed suit).

*Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  In addition, the nonmoving party may not rely solely on allegations or conclusory statements.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).  Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor.  *Id.* at 675.  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

FOIA cases are typically and appropriately decided on motions for summary judgment.  *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13  (D.D.C. 1980).  In a FOIA case, the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is

wholly [or partially] exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation omitted).

### III.  ANALYSIS

FOIA requires agencies of the federal government to release records to the public upon request, unless one of nine statutory exemptions applies. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975); 5 U.S.C. § 552(b). The agency bears the burden of demonstrating that a FOIA exemption applies. *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). To prevail in a FOIA case, the plaintiff must show that an agency has (1) improperly (2) withheld (3) agency records. *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989); *United We Stand America, Inc. v. IRS*, 359 F.3d 595, 598 (D.C. Cir. 2004).

CBP relies on FOIA Exemption 4 in refusing to turn over a list of names and addresses to the Newsletter. Exemption 4 protects from public disclosure information that is (1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential. 5 U.S.C. § 552(b)(4). Records are deemed to be "commercial" as long as the submitter has a commercial interest in them. *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983). And records are considered to be "obtained from a person" as long as they were submitted by a "partnership, corporation, association, or public or private organization other than an agency." 5 U.S.C. § 551(2). The information the Newsletter requests is "commercial" information that was "obtained from a person." In this case, the parties dispute whether the information is "confidential."

To determine whether information is "confidential" under Exemption 4, a court first must find that the information was submitted involuntarily — that the submitter was required to provide the information to the Government. *See Pub. Citizen Health Research Group v. FDA*, 185

F.3d 898, 903 (D.C. Cir. 1999). If the information was submitted involuntarily, the information is deemed confidential if its disclosure is "likely either '(1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.'" *Id.* (quoting *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974)). The second element of this test "has been interpreted to require both a showing of actual competition and a likelihood of substantial competitive injury." *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1152 (D.C. Cir. 1987). A "competitive injury" is one "flowing from the affirmative use of proprietary information by competitors." *FDA*, 704 F.2d at 1291 n. 30. In assessing whether the second element is met, "the Court need only 'exercise its judgment in view of the nature of the material sought and competitive circumstances in which the submitter does business,' but 'no actual adverse effect on competition need be shown.'" *Changzhou Laosan Group v. U. S. Customs & Border Prot. Bureau*, No. 04-1919, 2005 WL 913268, at *5 (D.D.C. Apr. 20, 2005) (quoting *Nat'l Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673, 675 (D.C. Cir. 1976)).

CBP contends that release of a list of importers' names paired with the applicable HTSUS number is a disclosure of confidential information that could cause substantial competitive damage. In support of this contention, CBP submitted the declaration of Ms. Suzuki. The declaration is accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal citation and quotation omitted). Although an agency opposing disclosure based on Exemption 4 is not required to provide a detailed economic analysis of the competitive environment, it must provide affidavits that contain more than mere conclusory

statements of competitive harm.  *See Pac. Architects & Eng'rs, Inc. v. Renegotiation Bd.*, 505 F.2d 383, 384 (D.C. Cir. 1974) (requiring agencies to provide more than generalized assertions and conclusory allegations).  As described below, CBP has done so here.

The pairing of the specific HTSUS subheading with the name and address of an importer would reveal that a particular importer brought one of the 27 specific goods covered by that subheading into the United States.  Suzuki Decl. ¶ 17.  Ms. Suzuki explained further:

> [F]or example, many tariff classifications specify only one or a few distinct chemical compounds.  A company known to have a "secret ingredient" would have its secret discovered rather quickly when their competitor knows the chemical description of the products it has entered.  Other tariff classifications are equally specific, in matters as diverse as textile fiber content, method of manufacture, intended use and in some cases, unit price.  The mere attachment of the HTSUS number to the importers name represents a very real threat to the importers' business.

*Id*. ¶ 18.

Moreover, a competitor could couple the importer name and HTSUS number with the publicly available "vessel manifest information" and in this way piece together the major aspects of an import transaction and a highly specified description of the imported product. *Id*. ¶ 20.  Vessel manifest information is provided by each carrier of goods imported into the United States.  Each carrier completes a Cargo Declaration or Inward Vessel Manifest, which lists all the bills of lading on the vessel and contains a general description of the goods in broad industry terms.  *Id*. ¶ 14.  Vessel manifest information is available to the public pursuant to statute and the implementing regulation.  *See* 19 U.S.C. § 1431; 19 C.F.R. § 103.31.  By putting together the importer's name, HTSUS number, and vessel manifest information, a competitor could glean the source of the imported merchandise (including country of origin and manufacturer), the supply chain, and the

quantity, and could identify with great specificity the exact product imported by a particular importer.  Suzuki Decl. ¶ 20.

> For example, a requester might be able to search through the vessel manifest to discover that a particular importer imported "cheese" since the vessel manifest only provides a general description of the goods.  However, when a requester is armed with the name and address of the importer and knowledge that this importer entered a product classified under HTSUS subheading 9903.02, access to the vessel manifest information would reveal that the particular importer imported Blue-veined Roquefort cheese in original loaves that was a product of France classified under HTSUS subheading 9903.02.30.

*Id*.

This case is substantially similar to *Gilda Industries*, 457 F. Supp. 2d 6.  There, the Court held that CBP properly withheld from an importer the names and addresses of other importers subject to the very same tariff at issue here.  This Court held:

> Disclosure of the names and addresses of importers who paid 100% duties under HTSUS subheading 9903.02 during a specified time frame, when cross-referenced with publicly available vehicle manifest information for specific shipments, would reveal information that could cause substantial competitive harm.  In short, the requested information could allow Gilda to steal business away from or otherwise disrupt the operations of its competitors. . . . Therefore, CBP properly withheld the requested information pursuant to FOIA Exemption 4.

*Id*. at 13.

The Newsletter requests the same type of information that the importer sought in *Gilda*.  The information in question, when combined with publicly available vessel manifest information, would provide companies with valuable knowledge regarding competitors' business operations.  Although the Newsletter argues that there is no danger of competitive harm because it is a periodic publication and not a competitor of any importer, the publication of the information it

seeks would cause the same type of competitive injury as release of the information to a competing importer. And although CBP's analogies to cheese and chemicals are technically irrelevant to show that the 244 importers would suffer competitive injury in any particular market, the Court is satisfied that the specific information at issue — importer names and addresses paired with HTSUS data revealing the specific goods contained in particular shipments — could be used to gain a significant competitive edge over the 244 importers who submitted the information. Moreover, given the fact that the Newsletter seeks names and addresses of importers subject to the Beef Hormone Directive, CBP cannot segregate the protected information in a way that would eliminate the likelihood of competitive injury. *See Mead Data Ctr., Inc. v. U.S. Dep't of the Air Force,* 566 F.2d 242, 260 (D.C. Cir. 1977) (information cannot be segregated if it is "inextricably intertwined with exempt portions"). Therefore, CBP properly withheld the requested information pursuant to Exemption 4.[4]

The Newsletter asserts that Exemption 4 does not apply because the information it seeks is publicly available to anyone who subscribes to the Port Import Export Reporting Service (PIERS). By subscribing to PIERS, the Newsletter alleges, any person could obtain information regarding the source of the consignee's name and address, the imported merchandise, the supply chain, and the quantity of goods. The government cannot rely on an exemption claim to justify withholding information already within the public domain. *Afshar v. Dep't of State*, 702 F.2d 1125, 1130-34 (D.C. Cir. 1983). However, the Newsletter "bear[s] the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Davis v. United*

---

[4] CBP also relied on Exemption 6, exempting from disclosure information about individuals when the disclosure would constitute a clearly unwarranted invasion of personal privacy. *See* 5 U.S.C. § 552(b)(6). Because the Newsletter seeks only information about the identity of "companies" and not of individuals, *see* Pl.'s Resp. at 10, Exemption 6 is not relevant to a determination of this case.

*States Dep't of Justice*, 968 F.2d 1276, 1279 (D.C. Cir. 1992).  And while the Newsletter has filed PIERS documents, it fails to satisfy this burden.  The documents show, at most, only that the same general type of information is available on PIERS, not that there is "a permanent public record of the exact" information that the Newsletter seeks.  *See id.* at 1280.  According to the Newsletter, PIERS obtains information from vessel manifests.  *See* Pl.'s Mot. for Summ. J., PIERS Decl. ¶ 5.  Vehicle manifest information is public information, provided by the carrier and not the importer.  It is less detailed and less reliable than the Entry and Entry Summary information provided by an importer.  Suzuki Decl. ¶ 14.  In sum, the Newsletter has failed to show that the PIERS information is identical to the information it seeks in this FOIA action.

The Newsletter also complains that CBP failed to advise the 244 importers that the Newsletter was seeking their names and addresses.  Regulations detail when CBP is required to provide notice to businesses who provided commercial information.  *See* 19 C.F.R. § 103.35(b)(1).  These regulations specify that such notice is not required when CBP has determined that the commercial information will not be disclosed.  *Id*. § 103.35(b)(2).  Because CBP found that the information requested by the Newsletter was exempt from disclosure, it was not required to notify the importers.

In sum, disclosure of the names and addresses of importers who paid 100% duties under HTSUS subheading 9903.02 during a specified time frame, when cross-referenced with publicly available vessel manifest information for specific shipments, would reveal information that could cause substantial competitive harm.  CBP properly declined to release this information to the Newsletter under FOIA Exemption 4.

## IV.  CONCLUSION

For the foregoing reasons, CBP's motion for summary judgment [Dkt. # 9] will be granted, and the Newsletter's cross motion for summary judgment [Dkt. # 11] will be denied. Further, CBP's motion to dismiss [Dkt. # 8] and its motion to strike [Dkt. # 13] will be denied as moot.[5]  A memorializing order accompanies this Memorandum Opinion.


Date:  December 9, 2008                      _____/s/_____
                                             ROSEMARY M. COLLYER
                                             United States District Judge

---

[5] Due to the Court's decision to grant summary judgment in favor of CBP, it is not necessary to reach the issues presented by CBP's motion to strike portions of the affidavits presented by the Newsletter.